[Cite as *State v. Kartsone*, 2011-Ohio-1930.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   95104

STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CONSTANTINE KARTSONE

DEFENDANT-APPELLANT

JUDGMENT:
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-530691

**BEFORE:**   Boyle, P.J., Jones, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   April 21, 2011

**ATTORNEY FOR APPELLANT**

Eric C. Nemecek
Ian N. Friedman & Associates, L.L.C.
1304 West 6th Street
Cleveland, Ohio    44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Luke Mahoney
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, P.J.:

{¶ 1}  Defendant-appellant, Constantine Kartsone, appeals his felonious assault convictions.   Finding merit to his first assignment of error, we reverse and remand for a new trial.

<u>Procedural History and Factual Background</u>

{¶ 2}  In November 2009, Kartsone was charged with three counts of felonious assault.   The charges stemmed from two separate altercations between Kartsone and his codefendant, Christopher Colacrai, and two alleged victims, Jeffrey Carroll and Michael

Whalen, outside a bar in Middleburg Heights. Count 1 alleged that Kartsone knowingly caused or attempted to cause physical harm to Carroll with a box cutter, in violation of R.C. 2903.11(A)(2). Counts 2 and 3 alleged that he knowingly caused serious physical harm to Whalen, in violation of R.C. 2903.11(A)(1), and that he knowingly caused or attempted to cause physical harm to Whalen with a box cutter, in violation of R.C. 2903.11(A)(2). Before the trial began, Colacrai pleaded guilty to one count of attempted felonious assault and one count of aggravated assault. The following evidence was presented to a jury.

{¶ 3} Kartsone and Colacrai lived in New York at the time the events took place. On the night in question, they had been driving from Michigan back to New York and had stopped at a Red Roof Inn for the night. They went to a bar near the hotel around 10:00 p.m.

{¶ 4} Around closing time, Kartsone and Colacrai went outside with Carroll and Carroll's friend, Mike Williams. Soon after that, Kartsone realized that his wallet was missing. Kartsone initially accused "Ranae," an employee from the bar, of stealing his wallet. Williams went back inside the bar to look for Kartsone's wallet. Although Kartsone had not accused Carroll, Carroll told Colacrai to pat him down to search for Kartsone's wallet. What occurred next is in dispute.

{¶ 5} According to Carroll, while Colacrai was patting him down, Kartsone came from behind him, swung at him, and hit him in his right temple with a sharp object. Williams and Carroll substantially testified to the same facts regarding what happened next.

When Williams came back outside, Carroll told him that Kartsone had stabbed him. Carroll wanted to "beat their asses," but Williams saw Kartsone holding a box cutter in his hand. Williams knew it was serious at that point and talked Carroll into leaving. Williams and Carroll took off running toward Williams's apartment complex, which was about a half mile away. Williams and Carroll said that Kartsone and Colacrai chased them until they went inside the building.

{¶ 6} Kartsone denied hitting Carroll with anything. According to Kartsone, after Colacrai patted Carroll down and did not find Kartsone's wallet, Williams came back out of the bar. At that point, Williams and Carroll ran off. Kartsone testified that he and Colacrai did chase Williams and Carroll, but said it was only for a few steps and only because Kartsone believed they took his wallet. Kartsone and Colacrai then decided to go back to the bar to look for Kartsone's missing wallet.

{¶ 7} Kartsone testified that when he and Colacrai returned to the bar, Whalen was blocking the entrance. Kartsone told Whalen that he was looking for his wallet, but Whalen informed him that the bar was closed and that he better leave. Kartsone said that he and Colacrai left at that point. But, after Colacrai realized he lost his cell phone, they walked back to the bar.

{¶ 8} When they got to the bar, Whalen and others were coming out of the bar. According to Kartsone, Whalen was mad that he and Colacrai were still there. Kartsone

testified that Whalen then attacked him, pulled him to the ground, and began choking him. Kartsone said he could not breathe, and he thought he was going to die. At that point, Kartsone reached into his pocket, grabbed his box cutter with his right hand, and started swinging, "trying to get [Whalen] off" of him. Kartsone said the next thing he remembered was Colacrai waking him up, and they went back to the hotel.

{¶ 9} According to Whalen, someone called the bar after it had closed and reported "that two individuals were trying to get into cars." When Whalen walked outside, his dome light was on in his car, as if someone had tried to open the door. He then saw Kartsone and Colacrai. Whalen asked them what they were doing, and they told Whalen that they were looking for their wallet and cell phone. Whalen told them that no one had their wallet or cell phone. Whalen then testified that Kartsone walked up to him, pushed him, and hit him in the face with something. Whalen knew that Kartsone hit him with a weapon, but he did not realize it was a knife until later. Whalen said when Kartsone hit him, they were near the bar. But after Kartsone hit him, Kartsone "actually backed away and started running." Whalen caught him, and they began fighting on the sidewalk in front of the Wendy's that is adjacent to the bar. Whalen testified that he was on top of Kartsone, with one hand on Kartsone's neck, and his other hand "cocked to hit." Whalen did not know if he actually hit Kartsone because Colacrai jumped on Whalen's back, and had him in a headlock. Whalen's friend broke up the fight.

{¶ 10} Whalen further testified that in addition to the cut on his face, he had a cut across his chest and on his bicep. Whalen explained that Kartsone only hit him one time; all the cuts were all from that one hit. Whalen required 70 stitches for the cut to his face and forehead.

{¶ 11} Three other witnesses who had been at the bar at closing time also testified: Whalen's wife, the bartender on duty that night, and the bartender's cousin. All three were present when Kartsone and Colacrai came back to the bar. And all three corroborated Whalen's version of the events.

{¶ 12} The jury found Kartsone guilty of all charges. The trial court sentenced him to an aggregate term of ten years in prison.

## Due Process Rights to a Fair Trial

{¶ 13} In his first assignment of error, Kartsone claims: "The trial court committed prejudicial error by permitting introduction of, and reference to, evidence concerning the codefendant's plea of guilty in the case at bar, thereby denying appellant his right to due process of law under the United States and Ohio constitutions." After a thorough review of the record, we agree.

{¶ 14} The codefendant, Colacrai, did not testify. Kartsone, however, stipulated to Colacrai's written statement being read to the jury during the state's case in chief. Colacrai

told the police in his written statement (grammar and spelling mistakes are in the original statement):

{¶ 15} "[Kartsone] had said someone had took his money he thought some black guy took his money.   [Kartsone] went to chace after the guy[.]   I went after [Kartsone] and grabed him.   We started to walk to the hotel when I noticed my phone was gone[.]   I went back to get my phone[.]   I got my phone and turned around and [Kartsone] and some guy was fighting[.]   Me and another guy stoped the fight.   Me and [Kartsone] went across the street and behind some building were he took of his shirt and I gave him mine.   We then went back to the hotel.

{¶ 16} "I didn't know [Kartsone] had a box cutter on him till we got to the hotel and he told me he cut the guy.   The box cutter has a wood handle and folds closed.   When I went to look for my phone I told [Kartsone] to wait were he was by the shoping center[.]   I walked to get my phone and turned and saw [Kartsone] fighting with a big bearded man[.] They fell to the ground[.]   I ran over to stop the fight[.]   There was blood everywhere[.] The big guy was on top of [Kartsone] chokeing him[.]   I grabed the mans hands from [Kartsone's] throat[.]   There was another guy trying to help stop the fight.

{¶ 17} "I was in Mich.   We wanted to buy old cars to bring home to restore them[.] We were going home and stoped here to sleep for the nite.   I was with my two uncles Gus and anothe friend[.]   My two uncles stayed in the hotel as well as my other friend.

{¶ 18} "When we got back to the hotel we went to my friends room to have [Kartsone] wait so I could get a room key[.]  [W]e then went to our room took a shower and went to go to bed when the police came and arrested us.

{¶ 19} "We were drinking in the bar for about 4 hours."

{¶ 20} After both sides had presented their case and all of the evidence had been admitted, the state asked the trial court: "Your honor, I would request that based on the stipulation to the statement provided by the codefendant, Christopher Colacrai, and the fact that Christopher Colacrai did in fact enter a plea in this court to the honorable judge that the court would take judicial notice of such occurrence."

{¶ 21} Over Kartsone's objection, immediately before closing arguments, the trial court informed the jury:

{¶ 22} "*** I am taking judicial notice of a fact that is part of the court's docket.

{¶ 23} "That judicial notice is that the codefendant in this case, Christopher Colacrai, plead guilty on April 27, 2010, to two counts, one of them attempted felonious assault ***.

{¶ 24} "In addition, the defendant plead guilty to, the codefendant, Mr. Colacrai, plead guilty to one count of aggravated assault in violation of 2903.12.

{¶ 25} "Now, at this time, ladies and gentlemen, pursuant to the Rules of Evidence, in a criminal case the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.  Do you understand?

{¶ 26} "So, once again, that's something for you to consider as part [of] your evidence. If you choose not to, then that is up to your purview as well."

A.     Judicial Notice

{¶ 27} The state argues that "the issue herein turns on whether the trial court erred by taking notice of the plea entered by [Colacrai]."   Although we do not agree that this is the crucial issue here, we will briefly address it.

{¶ 28} Evid.R. 201(B) states, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

{¶ 29} The Ohio Supreme Court has held that a court may take judicial notice of its own docket in certain instances.   In *Indus. Risk Insurers v. Lorenz Equip. Co.*, 69 Ohio St.3d 576, 1994-Ohio-442, 635 N.E.2d 14, the court held "[i]n an action that has once been voluntarily dismissed pursuant to Civ.R. 41(A)(1)(a), a trial court, when ruling on a Civ.R. 41(B)(1) motion to dismiss for failure to prosecute, may consider the conduct of the plaintiff in the prior action." Id. at the syllabus.   In explaining its rationale, the court explained "a trial court is not required to suffer from institutional amnesia.   It is axiomatic that a trial court may take judicial notice of its own docket."   Id. at 580.   See, also, *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, 877 N.E.2d 968 ("A court may take judicial

notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

{¶ 30} But in the criminal prosecution of a defendant, where the state bears the heavy burden of proving the defendant is guilty beyond a reasonable doubt, we find that the fact that Colacrai — a codefendant in the case — pleaded guilty is not the type of docket information that a trial court can judicially notice. Because of this, and the reasons set forth in the following analysis, we conclude that it was error for the trial court here to take judicial notice of Colacrai's guilty plea.

B.        Admissibility of Codefendant's Guilty Plea

{¶ 31} It is a long-standing rule that information that a codefendant has pleaded guilty to or has been convicted of an offense stemming from the same facts or circumstances forming the basis of a prosecution against another is inadmissible as proof against the other. See *Kazer v. Ohio* (1831), 5 Ohio 280, 281-282. This is because evidence that another pleaded guilty to or was convicted of an offense stemming from the same facts or circumstances is not necessarily evidence that the other committed the same offense. Id.

{¶ 32} "There are strong considerations against using a coconspirator's guilt as substantive evidence of another defendant's guilt. 'The foundation of [this] policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else ***. The defendant has a right to have his guilt or innocence

determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else.'" *State v. Smith*, 148 Ohio App.3d 274, 2002-Ohio-3114, 772 N.E.2d 1225, quoting *United States v. Gambino* (C.A.3, 1991), 926 F.2d 1355, 1363.

{¶ 33} In *United States v. Toner* (1949), 173 F.2d 140, 142, the court explained: "From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. See 4 Wigmore, Evidence Sec. 1171 et seq. (3d ed. 1940)."

{¶ 34} This is not to say that evidence of a codefendant's guilty plea is never admissible. In some circumstances, evidence of a codefendant's guilty plea may go to the jury if its use is limited to other purposes such as impeachment, or to show that the state has nothing to hide in its plea agreements. See, e.g., *United States v. King* (C.A.5, 1974), 505 F.2d 602, *United States v. Hilton* (C.A.11, 1985), 772 F.2d 783, 787. The test most often used to determine the admissibility of a codefendant's guilty plea was set forth in *United States v. Casto* (C.A.5, 1989), 889 F.2d 562, 567. This test requires a reviewing court to consider (1) whether a limiting instruction was given; (2) whether there was a proper purpose

in introducing the fact of the guilty plea; (3) whether the plea was improperly emphasized; (4) whether the plea was used as substantive evidence of guilt; and (5) whether the introduction of the plea was invited by defense counsel.

C.    *Casto* Test

    1.    Limiting Instruction

**{¶ 35}** As explained in *Smith*, 148 Ohio App.3d 274:

**{¶ 36}** "'The jury should be instructed as to the "limited" purpose for which they may consider the evidence that the witness has pleaded guilty to a crime which arose out of the same events for which defendant is on trial.    See Model Jury Instruction, Eighth Circuit (1993), Sec. 2.19.'" *State v. Clark* (May 4, 1994), 2d Dist. No. 13435, following *Gerberding v. United States* (C.A.8, 1973), 471 F.2d 55.

**{¶ 37}** "The model jury instruction of the Eighth Circuit states as follows:

**{¶ 38}** "'You have heard evidence that witness (name) has pleaded guilty to a crime which arose out of the same events for which the defendant is on trial here.    You must not consider that guilty plea as any evidence of this defendant's guilt.    You may consider that witness's guilty plea only for the purpose of determining how much, if at all, to rely upon that witness's testimony.'

**{¶ 39}** "The Committee Comments following this instruction provide an explanation:

{¶ 40} "'Evidence that a codefendant has pleaded guilty may not be used as substantive proof of a defendant's guilt. However, such evidence is admissible to impeach, to show the witness's acknowledgment of participation in the offense, or to reflect on his credibility. In such circumstance the jury should be instructed that the evidence is received for one or more of these purposes alone, and that the jurors are not to infer the guilt of the defendant.'" (Internal citations omitted.) *Smith* at 280-281 (Karpinski, J., concurring).

{¶ 41} Here, the trial court instructed the jury on judicial notice, but it did not instruct the jury with a limiting instruction regarding Colacrai's guilty plea. Kartsone, however, did not request one. Kartsone objected to the trial court taking judicial notice of Colacrai's guilty plea, but he did not request a limiting instruction.

{¶ 42} The Second Appellate District has held that "'[t]he admission of such evidence without a limiting instruction is not reversible error if defense counsel does not request an instruction and if the evidence was introduced for a proper purpose.'" *Clark*, quoting *Gerberding*, supra.

{¶ 43} In *King*, 505 F.2d at 607, the court made the following assessment of reviewing cases where a defendant failed to object to a mention that a codefendant had pleaded guilty prior to trial:

{¶ 44} "In assessing King's assertion of plain error in this case, then, we must carefully examine all the facts and circumstances of the case in their proper context. The presence or

absence of an instruction is an important factor, but it is also essential to consider other factors, such as whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by defense counsel, whether an objection was entered or an instruction requested, whether the defendant's failure to object to the testimony could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt."

**{¶ 45}** Thus, although Kartsone did not request a limiting instruction, that is not the end of our analysis. We must still look to the remaining factors to determine if the trial court erred by allowing evidence of Colacrai's plea to be submitted to the jury.

2. <u>Proper Purpose</u>

**{¶ 46}** "'Guilty pleas of codefendants should be brought to the attention of the jury in only certain narrow instances; i.e., when it is used to impeach trial testimony or to reflect on a witness' credibility in accordance with the standard rules of evidence; where other codefendants plead guilty during trial and are conspicuously absent; where opposing counsel has left the impression of unfairness which raises the issue or invites comment on the subject.'" *Clark*, supra, quoting *United States v. Bryza* (C.A.7, 1975), 522 F.2d 414.

**{¶ 47}** Here, Colacrai did not testify. Thus, none of these purposes apply.

3. <u>Improper Emphasis or Substantive Evidence</u>

{¶ 48} These two factors are related in this case, and we will discuss them together. The state argues this court should affirm because it did not place "improper emphasis" on Colacrai's plea. It quotes from *Clark*, which upheld the admission of the codefendants' guilty pleas, in support of its argument:

{¶ 49} "In the matter sub judice, the state offered only evidence that the codefendants had admitted their guilt by entering pleas of guilty to reduced charges. The State did not argue that this testimony should be received by the jury as substantive evidence of the appellant's guilt." Id. But we find the facts in *Clark* to be distinguishable. Five of the six codefendants in *Clark* testified at the defendant's trial. They were subject to cross-examination. And the fact that they pleaded guilty was relevant to their credibility.

{¶ 50} The state also contends that "it cannot be said that the introduction of the fact that [Colacrai] entered a guilty plea in this matter was not done for improper purpose or as substantive evidence of the Appellant's guilt." The state claims this is so because it only mentioned the plea one time during its closing argument and that it merely reiterated what the trial court had already told the jury. We are not persuaded.

{¶ 51} Here, the state requested the trial court take judicial notice of Colacrai's guilty plea at the close of all of the evidence, just before closing arguments. Then, the state *strategically mentioned* Colacrai's plea at the end of its *rebuttal closing argument* to the jury — the *very last thing it argued to the jury* — when it likely had the most impact. And, more

significantly, the state reminded the jury that Colacrai pleaded guilty immediately following its arguments — emphasizing to the jury that it pay special attention to Colacrai's written statement. The state specifically argued the following in its rebuttal argument:

{¶ 52} "Lastly, all the testimony throughout this entire case — I haven't spent much time on Chris Colacrai's statement, his written statement provided to the police on October 30th, the day after. Chris Colacrai's statement was provided at 10:30. Read it. Read it carefully. It's going to tell pretty much the same story. Doesn't offer a lot of detail. You might be able to see maybe why it doesn't or maybe he simply didn't see, but read this statement.

{¶ 53} "Also keep in mind that nobody at any point puts a weapon in Chris Colacrai's hands. Nobody ever claimed that Chris Colacrai was a part and being with [Kartsone], but that he never struck Mike Whalen and that he never struck Jeffrey Carroll. He facilitated what happened with Jeffrey Carroll and he actually helped in breaking up the fight between [Kartsone] and Mike Whalen.

{¶ 54} "Christopher Colacrai plead guilty to two counts, as to count one, attempted felonious assault, with the victim being Jeffrey Carroll. And he plead guilty to count three, aggravated assault, as it pertains to Mike Whalen.

{¶ 55} "[The court then informed the state that it had 30 seconds remaining.]

{¶ 56} "[The state then ended with:] We have his statement. Read his statement. He was there."

{¶ 57} After reviewing the record, we find that the state strategically placed an improper emphasis on the plea. The state's *only purpose* in mentioning Colacrai's guilty plea at that point was to provide substantive evidence of Kartsone's guilt. The state was asking the jury to infer that because Colacrai pleaded guilty, Kartsone must be guilty. This is strictly prohibited under *all* circumstances. See *United States v. Halbert* (C.A.9, 1981), 640 F.2d 1000 (discussing the high probability of prejudice to a defendant when a prosecutor improperly suggests in closing argument that the jury consider the plea to infer guilt).

4. Invited Error

{¶ 58} The final *Casto* factor is whether introduction of the plea was invited by something defense counsel did. The trial court seemed to allude to the fact that it believed defense counsel did invite the introduction of the plea — because defense counsel stipulated to Colacrai's statement being read to the jury. But defense counsel did not mention Colacrai's written statement in its opening remarks or closing argument.

{¶ 59} In *King*, 505 F.2d 602, where the court found that the defense counsel invited the error, the court explained:

{¶ 60} "Upon reviewing the record, we are firmly convinced that it presents no reversible error. Defense counsel's arguments to the jury and his references to Waldorf's

criminal record made it almost essential for the prosecution to bring out Waldorf's convictions on direct examination. Once Waldorf's background was injected into the case by defense counsel, his record could not be ignored by the Government. Nor could the Government have introduced all of Waldorf's convictions except the one which grew out of the scheme in question. To do so would have left the prosecution open to accusations of selective disclosure or misleading the jury. In this case the defense opened the door by first inviting the Government to introduce the evidence of Waldorf's plea, and then proceeding to bring out itself the evidence of Waldorf's plea. In so doing, appellant waived his claim that the introduction of Waldorf's plea was erroneous, and cannot now be heard to seek reversal for want of an unrequested instruction."

{¶ 61} In this case, there were no such circumstances.

{¶ 62} Accordingly, we conclude that four out of the five *Casto* factors are in Kartsone's favor. And arguably, even the first factor (he failed to request a limiting instruction) is not entirely against him because he did object to the trial court taking judicial notice of the Colacrai's guilty plea. Thus, after reviewing the record in its entirety, we find that the trial court erred when it informed the jury that it was taking judicial notice of the fact that Colacrai pleaded guilty and permitted the state to use the judicially-noticed fact in its closing argument.

Harmless Error Analysis

**{¶ 63}** Although we determined that it was error to admit evidence of Colacrai's guilty plea, we must nevertheless determine if the error was harmless. Any error will be deemed harmless if it did not affect the accused's "substantial rights." Otherwise stated, the accused has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Before an error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705. In this case, we cannot say that the error was harmless beyond a reasonable doubt.

**{¶ 64}** Although the state presented many witnesses at Kartsone's trial, we cannot ignore the significant factors in Kartsone's favor. First, the trial court took judicial notice of Colacrai's guilty plea after all of the evidence had been admitted and immediately before closing arguments.

**{¶ 65}** As an appellate court in Connecticut explained:

**{¶ 66}** "The concerns discussed in [*State v. Butler* (2003), 55 Conn.App. 502], extend to cases where, as here, the disclosure of the coconspirator's conviction is made by the court; when the court provides the jury with such information, the potential for prejudice is substantial. 'A judge presiding at a jury trial occupies a role of inherent power and dignity that commands a deference from the jury impossible to appraise precisely. What he tells the jury *** has great weight with them.' (Internal quotation marks omitted.) 'It is enough to

say that the trial judge is the arbiter of the many circumstances which may arise during a trial in which his function is to assure a fair and just outcome.'" (Citations omitted.) *State v. Martin* (2003), 77 Conn.App. 818, 831, 827 A.2d 1.

{¶ 67} In *Butler*, the case referred to above by the Connecticut appellate court, the appellate court had "held that a prosecutor's comment during closing argument regarding the outcomes of the trials of the defendant's coconspirators deprived the defendant of his due process right to a fair trial. [It] explained that in criminal cases, 'referring to what another jury may have done is clearly improper because the defendant's jury cannot permissibly rely on what they may assume a previous jury to have found ***. Such conduct raises the concern that a defendant might be convicted based upon the disposition of the charges against the [coconspirator], rather than upon an individual assessment of the remaining defendant's personal culpability.'" (Citation omitted; internal quotation marks omitted.) Id. at 513." *Martin* at 830.

{¶ 68} Here, the trial court informed the jury that it was taking judicial notice of the fact that Colacrai pleaded guilty to two charges, attempted felonious assault as it related to Carroll, and aggravated assault as it related to Whalen. The prosecutor then strategically argued this fact to the jury, and stressing that the jury read Colacrai's statement carefully. There was only one reason for the state to do so.

{¶ 69} Indeed, "[t]he admission of guilty pleas or convictions of codefendants not subject to cross-examination has been found by some courts to be plain error." *Clark*, 2d Dist. No. 13435, citing *United States v. McClain* (C.A.11,1987), 823 F.2d 1457; *United States v. Griffin* (C.A.11, 1985), 778 F.2d 707.

{¶ 70} When a guilty plea of a codefendant is brought to a jury's attention without any guiding instructions as to its use in their deliberations, the potential for misuse is manifest. *State v. Stefanelli* (N.J.1979), 396 A.2d 1105, 1113. Under the facts and circumstances of this case, it is our view that this misuse occurred here. During its deliberations, the jury only asked the judge one question: "May we have a copy of the stipulation you read about Chris Colacrai's plea?" The judge answered "no," and told them that they must rely on their collective memories. Based on this question, as well as our other analysis, we cannot conclude beyond a reasonable doubt that the jury did not misuse this information.

{¶ 71} We therefore find, based upon the record before us, that Kartsone was prejudiced by the trial court taking judicial notice of Colacrai's plea immediately before closing arguments, and permitting the state to use that fact in its closing arguments. As such, Kartsone is entitled to a new trial.

**{¶ 72}** Kartsone's remaining three assignments of error have been rendered moot by our disposition of the first.[1]

Judgment reversed and remanded for a new trial.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

LARRY A. JONES, J., and
EILEEN A. GALLAGHER, J., CONCUR

---

[1]"[2.] Appellant was denied due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article I, Section 10, of the Ohio Constitution when the trial court permitted the state to use appellant's post-arrest, post-Miranda warning silence for impeachment purposes.

"[3.] The state's introduction of testimony concerning appellant's pre-arrest silence as substantive evidence of guilt violated his Fifth Amendment rights under the United States Constitution.

"[4.] The trial court abused its discretion when it permitted introduction of testimony concerning appellant's pre-Miranda silence as substantive evidence of guilt."