[Cite as *State v. Adams*, 2016-Ohio-7772.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

STATE OF OHIO,                          :
                                        :       Case No.  15CA2
        Plaintiff-Appellee,             :
                                        :
        vs.                             :       DECISION AND JUDGMENT
                                        :       ENTRY
JASON M. ADAMS                          :
                                        :
        Defendant-Appellant.            :       **Released: 11/10/16**
_____

APPEARANCES:

James S. Sweeney, James Sweeney Law, LLC, Columbus, Ohio, for
Appellant.

Brigham M. Anderson, Prosecuting Attorney, and Robert C. Anderson,
Assistant Prosecuting Attorney, Ironton, Ohio, for Appellee.
_____

McFarland, J.

{¶1} Jason M. Adams appeals from the final judgment entry of

conviction and sentence of the Lawrence County Court of Common Pleas,

entered December 23, 2014.  A jury convicted Adams of complicity to

aggravated robbery, R.C. 2923.03/2911.01(A)(3), a felony of the first

degree.  Adams raises six assignments of error, arguing: (1) that his

conviction is against the manifest weight of the evidence; (2) that the trial

court ordered an "inconsistent" sentence; (3) that the trial court committed

plain error in permitting the jury to be informed that his codefendants pled

guilty; (4) that the trial court failed to properly advise him of post-release control; (5) that the trial court failed to give him all the required jail time credit; and, (6) that he was rendered ineffective assistance of counsel. However, upon our review of the record, we find no merit to Appellant's arguments, except for the issue regarding his post-release control notification. Further, the parties had resolved the issue regarding jail time credit prior to oral arguments in this matter, so we have declined to consider that alleged error. As such, we overrule Appellant's assignments of error except for assignment of error number four, which we sustain and remand for further proceedings consistent with current case law. In all other respects, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶2} Jason M. Adams was indicted for one count of aggravated robbery by the Lawrence County Grand Jury on March 25, 2014. The indictment occurred after Charles Sam Jones (Jones) was robbed on January 14, 2014, near the Central Christian Church in the City of Ironton. On that date, two church volunteers saw some commotion in front of the church, saw two men running away, and saw Jones and Appellant, who appeared to have been robbed.

{¶3} Jones, age 77 at the time of trial, was a local "bookie." Appellant had placed bets with Jones for approximately four months before the robbery. The robbery occurred at approximately 8:15 p.m. in the evening. Sergeant Brian Pauley of the Ironton Police Department responded to the scene. Detectives Mitch Crum and Joe Ross investigated the robbery.

{¶4} Detective Crum initially obtained surveillance video from Ironton High School, which faintly showed the robbery taking place and revealed the "get away" vehicle, a black Dodge Durango. Further investigation led Detective Crum to ask Appellant to come to the police department and give a statement, which he did. Appellant, his long-time friend Scott Lewis, and a third man, Ed Hampton, Lewis's uncle, were subsequently indicted for robbing Jones.

{¶5} Appellant's codefendants eventually entered guilty pleas and did not proceed to trial. However, Appellant, an Iraq war veteran with no prior criminal record and good standing in the community, proceeded to trial and testified on his own behalf. While the State argued Appellant was the mastermind of the scheme to rob Jones, who was known to carry large quantities of cash on his person, Appellant denied any involvement and maintained that he, too, was a victim of crime.

{¶6} The State presented testimony from Jones, the bystanders/witnesses at the church, the officers who investigated Jones' robbery, Appellant's codefendant Scott Lewis, and additional witnesses who identified and explained the State's exhibits.  Essentially, Jones testified that on the incident date, Appellant arranged an evening meeting with Jones to pay a gambling debt.  Appellant then changed the meeting place a couple of times.  When the two met at the church, Appellant paid Jones the money he owed and talked briefly.  Just after they parted, Lewis and Hampton approached Jones, robbed him and beat him.  Jones testified he immediately felt he had been "set up" by Appellant.  Jones did not know Lewis or Hampton, but Appellant had recently given him Lewis's name.  Interestingly, Jones testified that Appellant initially asked him to meet at the church because it was near the Urgent Care where his wife and child were, and he was in a hurry.  However, after the money was exchanged, Appellant made conversation and asked Jones if he would like to get a drink.

{¶7} Scott Lewis testified he and Appellant had been friends since elementary school.  While their contact had been sporadic after high school when Appellant went into the military and Lewis moved to Wyoming, at times the men talked 10-20 times a day.  Lewis had a private cell phone and a work phone.  Prior to the incident, Lewis did not know Sam Jones.

{¶8} Lewis testified it was Appellant's idea to rob Jones. Lewis testified Appellant needed money to remodel a house and after talking, the friends agreed to do it. Appellant also asked Lewis to get his uncle, Ed Hampton, involved. Ed Hampton had a criminal history and Appellant indicated he would "feel more comfortable" with Hampton involved. On the incident date, Lewis was working in West Virginia. He borrowed a co-worker's dark-colored Dodge Durango, drove to Ironton, and joined Appellant for lunch at Giovanni's.

{¶9} After leaving Giovanni's, Lewis and Appellant spoke by cell phone while driving around Ironton looking for Jones. Appellant described Jones' physical appearance, the vehicle he drove, and his daily routine matriculating through Ironton. Lewis testified Appellant's description of Jones was "key on point." Appellant also described to Lewis where Jones kept his money: "Smaller bills in his right pocket, larger bills, hundred and fifties in his left pocket and he carried large sums of cash on him * * *." Lewis drove around Ironton until it got dark. Then he picked up Ed Hampton.

{¶10} Appellant joined Lewis and Hampton at Johnny on the Spot on Second Street. Then they went to the Dollar General to purchase toy guns to use to scare Jones. While the original plan was for Appellant to meet Jones

at Johnny on the Spot, Appellant felt there were too many people there, so they changed the meeting place to Central Christian.  Adams drove his own vehicle to the church.  Lewis and Hampton parked at the old Ironton High School parking lot and walked to the church.  Because there were people in the back, Appellant changed the meeting with Jones to the front.

{¶11} After Appellant and Jones concluded business and Appellant walked away, Ed Hampton approached Jones from the front and demanded his money.  Lewis was behind.  Jones started to fall and Hampton rushed to get into his left pocket.  Lewis testified Appellant rushed back and pretended he was helping Jones.  Then Appellant and Ed Hampton had a "staged" fight during which Appellant fell and pretended he was hurt.  Lewis saw Hampton hit Jones, so he ran towards the truck.  As Lewis ran, he heard someone yelling that the police were on their way.

{¶12} The State's exhibits admitted at trial included surveillance film from Ironton High School; phone records between Appellant and Lewis on January 13th, 14th, and 15th, 2014; Appellant's initial statement to the responding officers; Appellant's recorded statement at the police department; surveillance film from Dollar General Store; and photographs of Jones' facial injuries after the robbery occurred.

{¶13} The defense strategy at trial was to cast Appellant as the model citizen while casting doubt on the credibility of the Ironton police officers and Scott Lewis. Appellant's testimony began by telling the jury that he was married to his high school girlfriend. They had been together since 1999 and had three children. He joined the United States Marine Corps in 2002, spent two years in combat in Iraq, and was honorably discharged. He also had some course work through Hocking College. Appellant had a good work record and was currently employed with the federal prison system in Kentucky.[1] Appellant was involved with little league football, basketball, and baseball and had handled the finances for the league. Appellant had no criminal record.

{¶14} Appellant testified he began placing bets with Jones in October 2013.[2] Appellant and Jones met on Tuesdays to pay. Lewis had been with him on two occasions when he paid Jones. He testified Lewis began asking him about placing bets with Jones and getting information about Jones, meeting places, and Jones' vehicle when the two went to an Ohio State football game in October 2013.

---

[1] Appellant testified he and his wife were currently going through divorce, due in part to the stress of his criminal case. He also informed he had been placed on administrative leave from his job since he had been arrested.

[2] He testified Detective Crum placed bets with Jones through a third person.

{¶15} Appellant testified that Lewis called him on the January 14, 2014 and told him he was on his way to Ironton. He needed to discuss "family issues" with Appellant. Appellant invited him to meet him for lunch at Giovanni's.

{¶16} Appellant testified Lewis asked him to meet at Johnny on the Spot at 6:45. Then, they rode around and eventually Lewis asked him to go with him to pick up Ed Hampton. Appellant had met Ed Hampton a few times prior. As they drove, Hampton talked about seeing his kids and not having money to buy them anything. Appellant offered to buy what he needed so they went to Dollar General to purchase the toy guns for Ed Hampton's children. They then dropped Appellant off at Johnny on the Spot. Appellant denied ever seeing Lewis again until in the courtroom.

{¶17} After Appellant was dropped off, he met Jones at the church. They talked briefly and he paid Jones. As Appellant was walking to his vehicle, he looked back and saw Jones on the ground with two people over him. He did not recognize the people. He ran back to try to help Jones. The larger individual hit him and he was knocked to the ground. He had a knot and red place on his head. He gave a brief statement to officers at the scene.

{¶18} The next day Lewis called him and asked him to meet at Burger King in Ashland, Kentucky. When he went there, Lewis did not show up

but Ed Hampton did.  Appellant was friends with some of the Ironton police officers.  Also on the day after the incident, Appellant was contacted by his friends and asked to come to the police department.  Appellant gave a statement at that time.  He testified he tried to answer the officers' questions but they kept cutting him off.

{¶19} Appellant denied planning the hit on Jones.  He denied being asked to be involved.  He denied needing money to remodel.  Appellant testified there was "nothing ever discussed about hitting Sam Jones.  No not specifically."  Appellant believed, looking back, he was naive in trusting Lewis with Jones' information.  Appellant testified he, too, was a victim of crime and had lost $1,500.00 dollars.

{¶20} The jury convicted Appellant of complicity to aggravated robbery on December 12, 2014.  The trial court sentenced Appellant to a nine-year prison term.  This timely appeal followed.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT WHEN THE JUDGMENT WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."

A.  Standard of Review

{¶21} When an appellate court considers a claim that a conviction is

against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and all reasonable inferences, and consider the witness credibility. *State v. Pickett,* 4th Dist. Athens No. 15CA13, 2016-Ohio-4593, ¶ 26; *State v. Dean,* 2015-Ohio-4347, ¶ 151, citing *Thompkins,* 78 Ohio St.3d at 387.  A reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31.  " 'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya,* 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2nd Dist. Montgomery No. 16288 (Aug. 22, 1997).

{¶22} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered .' " *Pickett, supra,* at 27, quoting *Thompkins,* 78

Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485

N.E.2d 717 (1st Dist.1983). If the prosecution presented substantial credible

evidence upon which the trier of fact reasonably could conclude, beyond a

reasonable doubt, that the essential elements of the offense had been

established, the judgment of conviction is not against the manifest weight of

the evidence. *State v. Eley,* 56 Ohio St.2d 169, 383 N.E.2d 132 (1978),

syllabus, (superseded by state constitutional amendment on other grounds in

*State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668 (1997)).

{**¶23**} "[W]hen conflicting evidence is presented at trial, a conviction

is not against the manifest weight of the evidence simply because the jury

believed the prosecution's testimony." *State v. Cooper,* 170 Ohio App.3d

418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 17, quoting *State v. Mason,* 9th

Dist. No. 21397, 2003-Ohio-5785, ¶ 17, quoting *State v. Gilliam,* 9th Dist.

No. 97CA006757, 1998 WL 487085 (Aug. 12, 1998). Moreover, a

conviction is not against the manifest weight of the evidence even if the

"evidence is subject to different interpretations." *State v. Adams*, 2nd Dist.

Greene Nos. 2013CA61, 2013-CA-62, 2014-Ohio-3432, ¶ 24. Instead, a

reviewing court should find a conviction against the manifest weight of the

evidence only in the " 'exceptional case in which the evidence weighs

heavily against the conviction.' " *Thompkins,* 78 Ohio St.3d at 387, quoting

*Martin,* 20 Ohio App.3d at 175. *Accord State v. Lindsey,* 87 Ohio St.3d 479,

483, 721 N.E.2d 995 (2000).

### B. Legal Analysis

**{¶24}** Appellant was found guilty of complicity to aggravated

robbery.  The Revised Code defines the offense of aggravated robbery as

follows:

> (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> * * *
>
> (3) Inflict, or attempt to inflict, serious physical harm on another.[3]

**{¶25}** Appellant argues his conviction is not supported by the

manifest weight of the evidence as the State failed to establish either that the

victim, Sam Jones, suffered serious physical harm, or that there was an

attempt to inflict serious physical harm upon him.  "Serious physical harm"

is defined under R.C. 2901.01(A)(5)(c), (d), and (e) as including harm that

produces "temporary, substantial incapacity", "temporary, serious

---

[3] (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
(1) Solicit or procure another to commit the offense;
(2) Aid or abet another in committing the offense;
(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
(4) Cause an innocent or irresponsible person to commit the offense.

disfigurement", or "acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." *State v. Scott,* 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶ 23.  The State disputes Appellant's argument, contending that Sam Jones suffered "temporary, serious disfigurement" and "physical pain of such duration as to result in substantial suffering."  The State relies on Jones' testimony that he was struck multiple times in the head area which resulted in the injuries depicted in State's Exhibits 16-19.  We agree with the State.  We find there was substantial credible evidence upon which a jury could find beyond a reasonable doubt that serious physical harm was inflicted upon Mr. Jones.

{¶26} "The degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.' " *State v. Mango,* 8th Dist. Cuyahoga No. 103146, 20156-Ohio-2935, ¶ 33, quoting *State v. Miller,* 8th Dist. Cuyahoga No. 98574, 2013-Ohio-1651, ¶ 18, quoting *State v. Irwin,* 7th Dist. Mahoning No. 06MA20, 2007-Ohio-4996, ¶ 37.  The statute does not define "substantial suffering"; instead, the trier-of-fact must determine its existence from the facts of each particular case. *State v. Bell,* 1989 WL 10372, (Feb. 7, 1989), *2.  *See State v. Daniels* (1984), 14 Ohio App.3d 41, (victim's testimony that defendant punched and

kicked her was sufficient to prove serious physical harm); *see also State v. Spikes*, 67 Ohio St.2d 405, 414, 423 N.E.2d 1122, (1981), fn.10 (dicta). "Physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). *State v. Henry,* 8th Dist. Cuyahoga No. 10002634, 2016-Ohio-692, ¶ 40.  The extent or degree of a victim's injuries is "normally a matter of the weight rather than the sufficiency of the evidence." *Henry, supra; Irwin* at ¶ 37, citing *State v. Salemi,* 8th Dist. Cuyahoga No. 81091, 2002-Ohio-7064, ¶ 34.

{¶27} Scott Lewis testified that during the altercation, he was behind Mr. Jones, who "started to fall back" and eventually was on the ground. Lewis testified that "when Sam went to sit up, Ed hit Sam Jones and Sam fell back down."  Mr. Jones testified as follows:

"A.     * * * That's about that time that's all I can remember and the guys running and he had a hold of me before I could turn around or anything.  They had me on the ground.

Q.     And were you hit?

A.     Quite a few times yeah.

Q.     And beat up pretty bad?

A.     Beat up. . . worse I've ever been beat up, yeah.

Q.     Describe to the jury what your injuries were from that.

A.     Well I had two of them, black eyes and the side of my face was all skinned up where they hit me and my forehead, had

a place inside my mouth they busted, I think there was six or eight stitches that had to be put in my lip. And um, broke my teeth, had false teeth and they broke them. And um, I was just lucky that um, we had two guys come around the building to save my life by coming around and heard them say that someone was coming. They got up off me and took off running.

{¶28} The State's exhibits 16, 17, 18, and 19 depict Jones' injuries. The photographs reveal bruising under both eye areas. Bruising is more noticeable on the right side of Jones' face, with obvious injuries on the right temple, right cheekbone, and right jaw. Also visible in the photographs are small marks on Mr. Jones' forehead, nose, and chin, as well as an injury to the lip area. At the time of the incident, Jones was 76 years old.

{¶29} In *Scott*, the defendant was charged with felonious assault and domestic violence after an altercation with his live-in girlfriend. At trial, the victim testified in great detail about the injuries she sustained. Specifically, she testified that her left eye was swollen shut for three weeks following the incident, that she broke her nose and lost teeth as a result of the incident, and that a blood clot developed under her eye. The State corroborated the victim's description of her injuries by introducing photographs of them. In Scott's appeal challenging the proof of "serious physical harm," we concluded these types of injury constitute "temporary, substantial

incapacity" and "temporary, serious disfigurement" as those words are commonly understood.

{¶30} Courts have also determined that "serious physical harm" exists " 'where the injuries caused the victim to seek medical treatment.' " *Scott, supra,* at ¶ 3. *State v. Muncy,* 4th Dist. Scioto No. 11CA3434, 2012-Ohio-4563, ¶ 23, quoting *State v. Sharp*, 12th Dist. Butler No. CA2009-09-236, 2010-Ohio-3470, ¶ 11. *See also Mango*, *supra,* at ¶ 34.  In *Scott,* the testimony established that the victim did visit a hospital.  We ultimately held that sufficient evidence of serious physical harm existed.  In the case sub judice, Sam Jones did not seek medical treatment immediately after the incident.  However, he did testify to having 6-8 stitches in his lip.  We note that on cross-examination, Appellant's wife Nicole Adams, herself a nurse, agreed it would have been a good idea for Jones to go to the hospital, that he was "beaten up pretty good."  She felt his injuries were serious enough that he needed to go to the hospital "because of his age."

{¶31} In *Henry,* the defendant was charged and convicted of felonious assault.  On appeal, Henry argued there was no evidence that the victim, Gatto, suffered from any degree of prolonged or intractable pain or was in any way incapacitated by his cut lip or "bent in" teeth; no evidence the victim missed any school or work or was precluded from engaging in any of

his other ordinary activities as a result of his injury; and no evidence the victim had a scar or any other type of permanent disfigurement. The appellate court was left to determine whether the injury to the victim's upper lip "involve[d] acute pain of such duration as to result in substantial suffering" within the meaning of R.C. 2901.01(A)(5)(e) or a "temporary, serious disfigurement" under R.C. 2901.01(A)(5)(d).

{¶32} Photographs taken by an officer at the hospital showed Gatto with a bloodied, swollen upper lip that appeared to be cut in two places. The victim testified that he was in "excruciating pain" when he arrived at the hospital and the medical records reflect that Gatto told the hospital staff that his pain level was six out of ten at that time. The victim testified that, as result of Henry's punch, his front teeth were "bent in," that he received 30 stitches and that he saw the "medical surgeon" "about five times" and his family dentist twice for his injuries. Viewing the evidence in the light most favorable to the State, the appellate court found that the victim's testimony, together with the photographs and medical records introduced by the State, was sufficient to establish that Henry caused him serious physical harm under R.C. 2901(A)(5)(d) or (e).

{¶33} Henry also made a manifest weight challenge based on the absence of medical evidence corroborating the victim's testimony regarding

the severity of his injuries and the treatment he received; the lack of evidence of any permanent scarring; and criticisms regarding inconsistencies in, and the lack of credibility of, Gatto's testimony.

{¶34} The appellate court noted the severity of Gatto's injury was unclear based on the photographs alone. Although Gatto claimed to have needed 30 stitches in and around his lip to repair the injury, there was no reference to Gatto having received any stitches in the medical records. Gatto testified that as a result of the punch he received from Henry his two front teeth were also "bent in"; however, there were no photographs of any damage to the victim's teeth and no testimony or other evidence in the record explaining what the victim meant when he said that his two front teeth were "bent in" or how, if at all, that condition was remedied. And, although Gatto claimed to have seen the "medical surgeon" "about five times" and his family dentist twice for the injuries he sustained, there were no medical records documenting any of his alleged follow-up treatment and, other than the victim's own testimony that a "plastic surgeon" removed his stitches without further testimony as to when that occurred what follow-up treatment involved. The record contained only Gatto's medical records from the emergency room where he had presented for treatment. No medical expert or medical provider testified.

{¶35} The appellate court acknowledged a number of credibility issues with Gatto's testimony. However the court concluded:

"[A] defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness's testimony are not credible or were inconsistent or contradictory. *See, e.g., State v. Wade,* 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38, citing *State v. Asberry*, 10th Dist. Franklin No. 04AP-1113, 2005-Ohio-4547, ¶ 11. The decision whether, and to what extent, to believe the testimony of a particular witness is "within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Johnson,* 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54. It was, therefore, within the province of the trial court, as the trier of fact, to believe Gatto's testimony regarding the severity of his injuries and to find that he sustained serious physical harm as a result of Henry's actions. It is not our role to substitute our judgment for that of the trial judge."

{¶36} In *Henry* at 40, the appellate court acknowledged it had "historically applie[d] a liberal interpretation of 'serious physical harm to persons.' " *State v. Davis,* 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, ¶ 20. The appellate court also stated that the fact that a victim seeks medical treatment does not alone "substantiate [ ] an inference that the victim suffered serious physical harm" and that although "[t]he inference derived from a victim seeking medical treatment is a proper factor to consider," it is "not a dispositive one." *State v. Clopton,* 8th Dist. Cuyahoga No. 95297, 2011-Ohio-2392, ¶ 14-16. For an injury to constitute "serious physical harm," it must fall within at least one of the five categories enumerated in

R.C. 2901.01(A)(5)(a)-(e). *See, e.g., State v. Addison*, 8th Dist. Cuyahoga

No. 96514, 2012-Ohio-260, ¶ 29.

{¶37} In *Henry,* the court was mindful that "[t]his court has

consistently held that the need for stitches constitutes serious physical harm

for purposes of a felonious assault conviction." *Id.* at 42. *State v. Studgions*,

8th Dist. Cuyahoga No. 94153, 2010-Ohio-5480, ¶ 10.  However, the court

acknowledged in most cases, it appears that it was not simply the fact that

the victim received stitches that led the court to conclude that the victim

sustained "serious physical harm" within the meaning of R.C.

2901.01(A)(5), but rather, the fact that, as is often the case with an injury

requiring stitches, the injury and stitches led to a permanent scar or

disfigurement.[4]  However, the *Henry* court observed that serious physical

harm has been found where a victim sustains a bloody cut and/or significant

swelling to the face, even where there is no evidence stitches were required.

*Henry, supra*, at 42; *See, e.g., State v. Payne,* 8th Dist. Cuyahoga No. 76539,

---

[4] *See Studgions* at ¶ 10; *Williams* at ¶ 10; *State v. Paythress,* 8th Dist. Cuyahoga No. 91554, 2009-Ohio-2717, ¶ 6-7 (finding serious physical harm when the medical records documented that victim sustained a three-to-four-inch cut on his face that required 60 stitches to close and victim was able to point out his injury to the jury, "suggesting that he suffered some permanent disfigurement as a result of the attack"); *see also State v. Townsend,* 9th Dist. Summit No. 24311, 2009-Ohio-3190, ¶ 10-12 (victim's testimony that defendant slapped her, punched her in the mouth, hit her in the face and spit on her, leaving her lip bleeding and hanging, requiring stitches and resulting in a permanent scar and lack of feeling in her lip was sufficient to establish "serious physical harm" under R.C. 2901.01(A)(5)); *State v. Edwards,* 83 Ohio App.3d 357, 360, 614 N.E.2d 1123 (1992) (where victim received 23 stitches for two-centimeter cut above his right eyebrow, which resulted in a permanent scar, and the reopening of a one-centimeter scar on his forehead, jury could reasonably find victim sustained some permanent disfigurement constituting "serious physical harm").

2000 WL 1010969 *9-10 (July 20, 2000) (bloody, cut and swollen right eye was sufficient to establish serious physical harm because the injury was a temporary, serious disfigurement).

{¶38} We have reviewed the photographs of Mr. Jones' injuries and the testimony of various witnesses describing his injuries. At the time Mr. Jones' face and head were beaten, he was approximately 76 years old. Sgt. Pauley testified when he arrived on the scene and encountered the elderly victim, he appeared to have been "beaten up." Pauley described "some bleeding from one of the eyebrows, and some swelling around his eye." Eric Williams, one of the church witnesses, testified Mr. Jones was injured and had "blood on his head." Appellant's wife testified Jones "had a busted lip," and was "starting to bruise." Even she testified she had recommended he seek medical attention.

{¶39} The photos reveal bruising on the right side of Jones' face. In our view, recognizing these determinations are "case by case" and "not an exact science," Jones' facial bruising and lip injury constitute a temporary serious disfigurement and pain resulting in substantial suffering. " 'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Id.* at

¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461

N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate

Review, Section 60, at 191-192 (1978).  While the evidence here is subject

to more than one interpretation, the jury obviously found Mr. Jones'

testimony about his injuries, without the inclusion of medical records to

verify the need for 6-8 stitches, to be credible.  We must afford substantial

deference to the jury's determination of credibility.

{¶40} We find this case not to be one in which the jury clearly lost its

way so as to create a manifest miscarriage of justice.  We find substantial

credible evidence that Sam Jones suffered serious physical harm.  As such,

we overrule Appellant's first assignment of error and affirm the judgment of

the trial court.

> "II. THE TRIAL COURT ERRED IN IMPOSING A
> SENTENCE OF NINE YEARS ON THE APPELLANT."

A.  Standard of Review

{¶41} When reviewing felony sentences we apply the standard of

review set forth in R.C. 2953.08(G)(2). *State v. Taylor,* 138 Ohio St.3d 194,

2014-Ohio-460, 5 N.E.3d 612, ¶ 40; *State v. Marcum,* 2016-Ohio-1002, ——-

N.E.3d ——, ¶ 1.  R.C. 2953.08(G)(2) specifies that an appellate court may

increase, reduce, modify, or vacate and remand a challenged felony sentence

if the court clearly and convincingly finds either that "the record does not

support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law." *Id.*

### B. Legal Analysis

{¶42} Appellant argues the trial court erred in imposing a sentence of nine years. Appellant points out that codefendant Scott Lewis was sentenced to a term of five years in prison, and codefendant Ed Hampton was sentenced to a term of six years. In support of the argument, Appellant points out that the record established that Appellant's codefendants were those responsible for physically harming the victim while Appellant never physically harmed him. Furthermore, Appellant had no felony record as compared to Ed Hampton. As such, Appellant concludes that his sentence is not supported by the record and is contrary to law.

{¶43} The State's first argument in response is that Appellant failed to raise the issue of consistency at sentencing and did not present any evidence in the trial court about similar offenders and their sentences. The State directs us to the transcript of Appellant's sentencing hearing in support. Based on the authority of *State v. Miller*, 2nd Dist. Clark No. 09CA28, 2010-Ohio-2138, the State contends Appellant has forfeited his ability to raise this issue on appeal. Secondly, the State contends that the trial court was not obligated to impose a similar sentence on Appellant because: (1)

Appellant is the one who masterminded the robbery; (2) planned the details; and (3) never acknowledged his guilt or any remorse. Finally, the State argues that R.C. 2929.11(B), with its inconsistency language, has no merit when a trial court states that it has considered the purposes and principles of sentencing in accordance with R.C. 2929.11, 2929.12, and has weighed the applicable factors in R.C. 2929.13 and R.C. 2929.14.

{¶44} The language of R.C. 2929.11(B) provides that a felony sentence must be "consistent with sentences imposed for similar crimes committed by similar offenders." In *State v. Gibson,* 8th Dist. Cuyahoga No. 98725, 2013 WL 5517927, the appellate court observed that there is no requirement that codefendants receive equal sentences. *Id*. at ¶ 76, citing *State v. Wickham,* 5th Dist. Muskingum No. CT2006-0084, 2007-Ohio-1754, ¶ 29, citing *State v. Lloyd,* 11th Dist. Lake No. 2002-L-069, 2003-Ohio-6417, ¶ 21 and *United States v. Fry* (C.A.6, 1987), 831 F.2d 664, 667. "Each defendant is different and nothing prohibits a trial court from imposing two different sentences upon individuals convicted of similar crimes." *Wickham* at ¶ 29, citing *State v. Aguirre,* 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, at ¶ 50. When that happens, "the task of the appellate court is to determine whether the sentence is so unusual as to be outside the mainstream of local judicial practice. We bear in mind that

although offenses may be similar, there may be distinguishing factors that justify dissimilar sentences." *State v. Beasley,* 8th Dist. Cuyahoga No. 82884, 2004-Ohio-988, ¶ 24 (internal citation omitted).

{¶45} In *Gibson,* the defendant raised a "consistency" argument. The Gibson court noted that in order to support a contention that a sentence is disproportionate to sentences imposed upon other offenders, the defendant must raise this issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal. *State v. Jones,* 8th Dist. Cuyahoga No. 99121, 2013-Ohio-3141, ¶ 17, citing *State v. Edwards,* 8th Dist. Cuyahoga No. 89181, 2007-Ohio-6068. In *Gibson,* the record revealed that Gibson's counsel did not make any proportionality argument. The appellate court summarily overruled Gibson's assignment of error.

{¶46} Likewise, in *State v. Montanez-Roldon,* 8th Dist. Cuyahoga No. 103509, 2016 WL 2941098, the appellate court observed that "[a] consistency-in-sentencing determination, along with all sentencing determinations pursuant to R.C. 2929.11 and 2929.12, is a fact-intensive inquiry that does not lend itself to being initially reviewed at the appellate level." *Id.* at ¶ 14. The court held:

> "[A]ny review must begin with the defendant producing a
> record for the trial court's consideration before the final

sentence is imposed. As courts have long concluded, a "defendant must raise [the consistency-in-sentencing] issue before the trial court and present some evidence, however minimal, in order to provide a starting point for analysis and to preserve the issue for appeal." (Emphasis added.) *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 37, citing *State v. Lang*, 8th Dist. Cuyahoga No. 92099, 2010-Ohio-433; *State v. Picha,* 8th Dist. Cuyahoga No. 102506, 2015-Ohio-4380, ¶ 9. Without evidence provided on the record at sentencing upon which to base an R.C. 2929 .11(B) argument on appeal, and without any other arguments for us to consider for the purpose of declaring Montanez–Roldon's sentence contrary to law, we cannot review his final sentence as being contrary to law pursuant to R.C. 2953.08(A)(4)."

**{¶47}** We have completely reviewed the transcript of Appellant's sentencing. It is true the transcript is devoid of any mention of Appellant's codefendants' sentences or that Appellant's sentence was inconsistent. As such, we could summarily overrule the assignment of error. However, in the interests of justice, we would point out that even a cursory review demonstrates that the trial court weighed the purposes and principals of R.C. 2929.11 and the seriousness and recidivism factors of R.C. 2929.12. The trial court also stated it was taking into consideration Appellant's military service, pursuant to R.C. 2929.14.

**{¶48}** Furthermore, Appellant was subject to a maximum sentence of eleven years for aggravated robbery. The State had recommended a ten-year sentence. The trial court noted Appellant's previous lack of a criminal record and his military service when it imposed the nine-year prison

sentence. Appellant's sentence was within the range for a felony of the first

degree. 2929.14(A)(1).

{¶49} For the foregoing reasons, we find no merit to Appellant's

argument that his sentence was inconsistent with those of his codefendants.

We therefore overrule the second assignment of error and affirm the

judgment of the trial court.

> "III. THE TRIAL COURT COMMITTED PLAIN ERROR IN
> PERMITTING INFORMATION THAT APPELLANT'S
> CODEFENDANTS HAD PLEAD (SIC) GUILTY."

A. Standard of Review

{¶50} At trial, Appellant's counsel failed to object to the introduction

of evidence that Appellant's codefendants Scott Lewis and Ed Hampton had

already entered pleas. A failure to object at trial constitutes a waiver of all

but plain error of the issues on appeal. *Gibson, supra,* at ¶ 83, citing *State v.*

*Williams,* 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977). Under Crim.R.

52(B), plain errors affecting substantial rights may be noticed by an

appellate court even though they were not brought to the attention of the trial

court. *Gibson supra,* at ¶ 84. To constitute plain error, there must be an

error that is plain or obvious and that affected the outcome of the case. *Id; In*

*re: J.G.,* 8th Dist. Cuyahoga No. 98625, 2013-Ohio-583, ¶ 10, citing *State v.*

*Barnes,* 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Courts are

to notice plain error under Crim.R. 52(B) "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*

B. Legal Analysis

{¶51} Appellant argues that at his trial, the jury was often informed of the fact that his codefendants Scott Lewis and Ed Hampton had already pleaded guilty. This was pointed out in opening statements, during Lewis' direct testimony, and during closing argument, and in the jury instructions. Appellant argues disclosing their pleas rises to the level of plain error because his defense was that he, too, was a victim of crime. Lewis and Appellant had been friends since childhood. Lewis's guilt was critical to linking Appellant with the robbery. Appellant submits there was no valid tactical consideration and the trial court's limiting instruction on the inclusion of the codefendants' pleas were insufficient.

{¶52} In response, the State argues that it is sound and common trial strategy by a defendant to bring to the attention of the jury that a codefendant has already entered a plea in order to impeach the codefendant's testimony. The State's purpose, which was proper, was to introduce the evidence of codefendant's plea in order to lessen the impact of the information on the jury, and to let the jury know "up front," that Lewis had a

plea agreement with the State. The State points out that defense counsel's closing argument obviously and strategically utilized this information in order to cast doubt on Lewis's credibility.

{¶53} The Eighth Appellate District set forth a careful analysis of this argument and the law to be applied in *State v. Kartsone,* 8th Dist. Cuyahoga No. 95104, 2011-Ohio-1930. There, Kartsone was convicted of three counts of felonious assault. Kartsone's codefendant had entered a plea but did not testify. At trial, Kartsone stipulated that his codefendant's written statement would be read to the jury. After both sides presented their cases, the State requested the trial court to take judicial notice that the codefendant had previously entered a guilty plea. Kartsone objected but the trial court overruled. The trial court took judicial notice of the fact of the plea just before closing arguments. Then in rebuttal, the State strategically emphasized the fact of the plea. On appeal, Kartsone argued the trial court erred to his prejudice.

{¶54} The *Kartsone* appellate court began by citing a long-standing rule that information that a codefendant has pleaded guilty to or has been convicted of an offense stemming from the same facts or circumstances forming the basis of a prosecution against another is inadmissible as proof against the other. *Id.* at 31. *See Kazer v. Ohio,* 5 Ohio 280, 281-282, 1831

WL 97 (1831). This is because evidence that another pleaded guilty to or was convicted of an offense stemming from the same facts or circumstances is not necessarily evidence that the other committed the same offense. *Id.*

> "There are strong considerations against using a coconspirator's guilt as substantive evidence of another defendant's guilt. 'The foundation of [this] policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else * * *. The defendant has a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else.' " *Kartsone* at ¶ 32, quoting *State v. Smith,* 148 Ohio App.3d 274, 2002-Ohio-3114, 772 N.E.2d 1225, quoting *United States v. Gambino* (C.A.3, 1991), 926 F.2d 1355, 1363.

The *Kartsone* court explained, as in *United States v. Toner*, 173 F.2d 140, 142 (1949): "From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A." *Id.* at 33. However, *Kartsone* pointed out:

> "This is not to say that evidence of a codefendant's guilty plea is never admissible. In some circumstances, evidence of a codefendant's guilty plea may go to the jury if its use is limited to other purposes such as impeachment, or to show that the state has nothing to hide in its plea agreements. *See, e.g., United States v. King* (C.A.5, 1974), 505 F.2d 602, *United States v. Hilton* (C.A.11, 1985), 772 F.2d 783, 787. The test most often used to determine the admissibility of a codefendant's guilty plea was set forth in *United States v. Casto* (C.A.5, 1989), 889 F.2d 562, 567. This test requires a

reviewing court to consider (1) whether a limiting instruction was given; (2) whether there was a proper purpose in introducing the fact of the guilty plea; (3) whether the plea was improperly emphasized; (4) whether the plea was used as substantive evidence of guilt; and (5) whether the introduction of the plea was invited by defense counsel." *Kartsone, supra,* at ¶ 34.

{¶55} The *Kartsone* court analyzed the defendant's argument and the case law set forth in *Casto*, beginning with the fact that the trial court did not instruct the jury with a limiting instruction regarding the codefendant's guilty plea, as well as the fact Kartsone did not request one. The *Kartsone* court observed the model jury instruction of the Eighth Circuit states as follows:

> " 'You have heard evidence that witness (name) has pleaded guilty to a crime which arose out of the same events for which the defendant is on trial here. You must not consider that guilty plea as any evidence of this defendant's guilt. You may consider that witness's guilty plea only for the purpose of determining how much, if at all, to rely upon that witness's testimony.' *Id.* at 38.

{¶56} The Committee Comments following this instruction provide an explanation:

> " 'Evidence that a codefendant has pleaded guilty may not be used as substantive proof of a defendant's guilt. However, such evidence is admissible to impeach, to show the witness's acknowledgment of participation in the offense, or to reflect on his credibility. In such circumstance the jury should be instructed that the evidence is received for one or more of these purposes alone, and that the jurors are not to infer the guilt of

the defendant.' " (Internal citations omitted.) *Smith* at 280-281, 772 N.E.2d 1225 (Karpinski, J., concurring). *Kartsone, supra,* at ¶ 40.

**{¶57}** As indicated above, Kartsone did not request a limiting instruction. The *Kartsone* court noted the Second Appellate District has held that " '[t]he admission of such evidence without a limiting instruction is not reversible error if defense counsel does not request an instruction and if the evidence was introduced for a proper purpose.' " *Id.* at 41, quoting *Clark, supra,* and *Gerberding, supra.*

**{¶58}** The appellate court determined although Kartsone did not request a limiting instruction that did not end the analysis. The court looked to the remaining factors to determine if the trial court erred by allowing evidence of his codefendant's plea to be submitted to the jury. The court next analyzed whether or not there was a proper purpose in introducing the evidence. " 'Guilty pleas of codefendants should be brought to the attention of the jury in only certain narrow instances; i.e., when it is used to impeach trial testimony or to reflect on a witness' credibility in accordance with the standard rules of evidence; where other codefendants plead guilty during trial and are conspicuously absent; where opposing counsel has left the impression of unfairness which raises the issue or invites comment on the

subject.' " *Clark, supra,* quoting *United States v. Bryza* (C.A.7, 1975), 522

F.2d 414.  In *Kartsone,* the court found no proper purpose applied.

{¶59} *Kartsone* also discussed factors three and four, "improper

emphasis" or "substantive evidence."  The State emphasized it only

mentioned the plea one time during its closing argument and that it merely

reiterated what the trial court had already told the jury.  However, the

appellate court was not persuaded.  The court noted the State strategically

mentioned the codefendant's plea at the end of its rebuttal closing argument

to the jury – the very last thing it argued to the jury – when it likely had the

most impact.  The State specifically argued the evidence in its rebuttal

argument.  After reviewing the record, the appellate court found that the

State strategically placed an improper emphasis on the plea and court held:

> "The state's only purpose in mentioning [the codefendant's]
> guilty plea at that point was to provide substantive evidence of
> Kartsone's guilt. The state was asking the jury to infer that
> because [his codefendant] pleaded guilty, Kartsone must be
> guilty. This is strictly prohibited under all circumstances." *Id.*

{¶60} *Kartsone* analyzed the final *Casto* factor, whether introduction

of the plea was invited by something defense counsel did.  The trial court

seemed to allude to the fact that it believed defense counsel did invite the

introduction of the plea because defense counsel stipulated to the

codefendant's statement being read to the jury.  But defense counsel did not

mention the written statement in its opening remarks or closing argument.
The appellate court found no invited error and concluded that four out of the
five *Casto* factors were in Kartsone's favor.

{¶61} The *Kartsone* court went on to determine whether the error was
harmless. Any error will be deemed harmless if it did not affect the
accused's "substantial rights." *Id.* at 63. When a guilty plea of a codefendant
is brought to a jury's attention without any guiding instructions as to its use
in their deliberations, the potential for misuse is manifest. *Kartsone* at 70;
*State v. Stefanelli* (N.J.1979), 78 N.J. 418, 396 A.2d 1105, 1113. The
appellate court concluded that the error was not harmless beyond a
reasonable doubt under the facts and circumstances of the case. The court
found Kartsone was entitled to a new trial.

{¶62} While the *Kartsone* opinion provides us a very detailed
analysis, other cases have applied the *Casto* test and have done so in a more
generalized or summary fashion. In *State v. Holbrook*, the defendant was
convicted by a jury of complicity to commit felonious assault, complicity to
tampering with evidence, and obstructing justice. At trial, the jury had been
informed that a codefendant had already "taken his lumps." On appeal,
Holbrook argued that the statement was prejudicial and compromised a fair
trial.

{**¶63**} After discussing the test set forth in *Casto* and *Kartsone,* the appellate court noted there was no argument concerning invited error. The court first considered whether a limiting instruction was given and whether the information was used as substantive evidence of guilt. The court further noted that the challenged information was introduced in closing argument, not during the trial.

{**¶64**} Upon review of the transcript, the *Holbrook* court found that the trial court informed the jury, generally, that the statements of counsel in closing arguments "are not to be considered as evidence." *Id.* at 36. The court further instructed the jury "[t]he defendant must be found not guilty unless the State produces evidence, which convinces you beyond a reasonable doubt of every essential element of the offense charged in the indictment." *Id.* The *Holbrook* court found the limiting instruction sufficient because the information was produced in closing argument and not used as substantive evidence of guilt. *Id.*

{**¶65**} *Holbrook* next considered whether there was a proper purpose in introducing the fact of the guilty plea and whether it was improperly emphasized. Once during closing argument, the State implied that the codefendant had been found guilty of attempted murder. It has long been held that "no person shall be bound by a judgment but him who has had an

opportunity to be heard in the cause concluded by the judgment." *Holbrook supra,* at 37, quoting *Kazer* at 282. The court found that it was improper for the prosecution to reference the specific disposition of the codefendant's case in this matter. However, the information was not improperly emphasized and Holbrook was eventually acquitted of conspiracy to commit murder and conspiracy to commit attempted murder. The *Holbrook* court concluded that after consideration of all of the factors set forth in the *Casto* test, the prosecutor's statement was improper. However, the court did not believe the prosecutor's actions prejudicially affected appellant's substantial rights.

{¶66} In *State v. Clement,* 8th Dist. Cuyahoga No. 94869, 2012-Ohio 582, the defendant was convicted of multiple charges including aggravated murder, murder, aggravated robbery, and kidnapping in conjunction with a drug deal involving multiple parties which had gone awry. The Eighth District Appellate Court considered Clement's argument on appeal that the introduction of his two codefendants' convictions was error. Clement asserted that the trial court should have instructed the jury that his codefendants' pleas of guilty or convictions could not be considered as substantive evidence of Clement's guilt. Citing *Kartsone* and *Clark, supra,* the appellate court observed:

> " '[T]he admission of such evidence without a limiting
> instruction is not reversible error if defense counsel does not

request an instruction and if the evidence was introduced for a proper purpose.' Proper purposes include impeaching the witness or showing that the state has nothing to hide in its plea agreements." *Id.* at ¶ 42; *Clement, supra,* at ¶ 9.

{¶67} The appellate court concluded that Clement did not establish the prerequisites for giving a limiting instruction. The court further found that a review of the transcripts showed that the guilty plea was introduced for proper purposes and that the prosecutor did not emphasize the guilty plea or the codefendant's conviction. Clement's argument was not well taken.

{¶68} As set forth above, we review for plain error. Appellant did not request a limiting instruction. At the close of trial, the court instructed the jury as follows:

"You have heard the testimony from Scott Lewis another person who pled guilty to this robbery in which the same crime is charged as in this case and is said to be an accomplish. (Sic.) An accomplis is one who purposely, knowingly, assists or joins another in the commission of a crime. Whether Scott Lewis was an accomplis and the weight to give his testimony are matters for you to determine. Testimony of a person who you find to be an accomplis should be viewed with grave suspension (Sic.) and weighed with great caution."

{¶69} While this is a standard Ohio jury instruction, and it does point out the proper purpose for consideration of the evidence is for credibility purposes, this does not follow the model jury instruction highlighted by the Eighth Appellate District in *Kartsone,* which specified that the jury was not

to consider a codefendant's guilty plea as evidence of Appellant's guilt.  As in *Kartsone,* we look to the remaining factors to determine any error.

{¶70} The next question is whether or not there was a proper purpose in introducing the evidence.  The instances at trial wherein the State informed the jury regarding the codefendants' pleas began with the State's opening remarks:

> "* * * It's at that time Jason sees…wow.  This man carries a substantial amount of money.  Maybe I'll take it.  You see Jason and Scott Lewis who is a codefendant in this case who has already pled guilty to the offense of robbery are best friends.  They've been best friends since they were young and children."

{¶71} At the end of opening, the prosecutor also stated:

> "You'll hear evidence from Scott Lewis who's pled guilty in the case, who is Jason Adams' best friend and he's going to tell you how this robbery was planned and how it took place. * * * There will be no doubt that Jason Adams is guilty of aiding and abetting Scott Lewis and Ed Hampton."

{¶72} Defense chose to defer opening statement.  The next time a codefendant's plea is referenced occurred when Scott Lewis testified:

"Q:    You have been indicted in this case with an indictment from Lawrence County grand jury, for robbery is that correct?

A:    Yes sir.

Q:    You are represented by an attorney?

A:    Yes sir.

Q:     And your attorney I believe is in the courtroom, Mr. Wolfson.

A:     Yes Sir.

Q:     You have pled guilty to robbery is that correct?

A:     Yes sir.

Q.     And that's in connection with the January 14, 2014 robbery of Sam Jones?

A.     Yes sir.

* * *

Q:     You've admitted your involvement in that, correct?

A:     Yes sir.

* * *

Q:     Um, in exchange for your testimony the State is going to recommend a sentence for you, when the Judge sentences you at that later sentencing date and that is a sentence of five years in prison* * *.

A:     Yes sir.

Q:     That's your understanding?

A:     Yes.

Q.     The deal that you and your attorney reached with the State of Ohio in your plea negotiations?

A:     Yes sir.

Q.     Do you know Jason Adams?

Q.     Yes sir.

Q.      Tell the jury how you know Jason.

A.      We grew up together * * *.  Just been life-long friends.”

{¶73} The next reference to the codefendants' pleas occurred during

the State's closing:

> “One of the things that the Judge is going to tell you is that you
> have to find he aided and abetted Scott Lewis, and Ed
> Hampton, in committing this aggravated robbery.  As the proof
> in this case was both Ed Hampton and Scott Lewis, had been
> convicted of the robbery, um, and each pled guilty to the
> offense.”

{¶74} Finally, on rebuttal, the State argued:

> “The Judge will give you the legal instructions in a minute.  He
> talks about Scott Lewis' testimony.  Let's compare Scott
> Lewis' testimony with Jason Adams' testimony.  Who's more
> believable.  In your test of credibility who do you believe.  He
> says well Scott Lewis he's got no reason to lie.  What is it?
> What is it?  He's pled guilty to this offense.  Going to spend the
> next five years in prison?  He has to testify against his best
> friend since they were kids.  What's his reason to lie?  Why
> would he lie, why would he do that?”

{¶75} It would appear that the purpose for introducing the fact of the

codefendants' guilty pleas, especially that of Scott Lewis, was because the

State reasonably anticipated that defense counsel would attack Lewis's

credibility, which was done.  During cross-examination, defense counsel

elicited repetitive testimony about Lewis's plea bargain with the State of

Ohio and his guilty plea to aggravated burglary.  He also attempted to

damage Lewis's credibility with the jury by inquiring about Lewis's past,

including a failed business, financial trouble, alleged drug dealing, a

discharge from employment, and accusing Lewis of fabricating a confession.

In closing, defense counsel argued:

> "The testimony of a codefendant, Scott Lewis, you will receive
> in instructions is to be viewed with gray suspicion. Remember
> that when you go back and you weigh what he had to say.  And
> think about his motives for what he said. * * * And again he is
> a convicted criminal. * * * Think back to Scott Lewis'
> testimony and think about how he was all over the place when
> he testified.  It wasn't consistent and that's one of the things
> you look at and see if you are being told the truth.   The truth
> doesn't change."

{¶76} Defense counsel further argued:

> "You have one man and that one man would be Scott Lewis,
> and he's the only evidence that could implicate Jason Adams in
> this.  And again, he is a convicted criminal."

{¶77} Based upon our review of the transcript, we find it appears the

State had a proper purpose in introducing the fact of Lewis's guilty plea and

the details of his plea agreement.  Furthermore, we find the plea was not

improperly emphasized.  The State introduced the plea information in

opening and in Lewis's direct examination.  Although it was mentioned

again in closing and rebuttal, it was mentioned enough by opposing counsel

as well that there would have been little shock value when the State again

mentioned it in closing and rebuttal.  Furthermore, the transcript does not

reveal any argument by the State that the evidence of Lewis's plea was argued to be additional evidence of Appellant's guilt.

{¶78} We, however, note there is no evidence in the transcript to suggest that defense counsel invited this introduction of evidence. Defense counsel deferred opening statement, so the State made a strategic decision to introduce the evidence for fear the defense would highlight the information as it indeed did. We conclude there was no error, let alone plain error, in allowing the information of the codefendants' pleas to be transmitted to the jury.

{¶79} Had there been error, we would not find it to have affected the outcome of the case as there was additional overwhelming evidence of Appellant's guilt. The jury was presented evidence that there were numerous phone calls which occurred between Appellant and Scott Lewis on the days before, during, and after the robbery. On the date of the robbery alone, there were 40 calls between the friends. The evidence of the frequency of calls was provided to the jury. Scott Lewis drove from West Virginia to meet with Appellant at Giovanni's in Ironton on the date of the incident. After their lunch meeting, an additional 24 calls took place between the two friends up until the time of the incident. And, there were numerous calls between the two after the robbery until the next day. While

the subject of the conversations is not known, but for the testimony of Scott Lewis, the fact of the frequent phone calls is circumstantial evidence of planning and preparation for the crime.

{¶80} The jury was provided surveillance tape of the friends leaving their meeting at Giovanni's, as well as surveillance tape of Appellant at the Dollar General store in Ironton. Appellant, Lewis, and Hampton went into Dollar General and purchased toy guns. Appellant is clearly seen doing the purchasing, which he explained as being for Hampton's children. Lewis testified the toy guns were purchased in order to use to frighten Jones.

{¶81} Appellant also admitted he met with Ed Hampton at Burger King in Ashland, Kentucky the day after the robbery. While he explained that Lewis invited him there and did not show up, Lewis testified the meeting was planned. This was another conflict in the evidence, again involving Appellant's credibility, which the jury had to resolve.

{¶82} Appellant also gave statements to the officers who testified. In his first statement, he failed to mention that he had made and received multiple phone calls to Scott Lewis, who was then known to be a primary suspect in the robbery. Appellant failed to mention he had been to Dollar General with Lewis and another person. He failed to mention he even knew Scott Lewis or Ed Hampton.

{¶83} Convincing evidence is the fact that Appellant was the only link between Scott Lewis and Sam Jones. Both Lewis and Jones testified they did not know each other. Lewis testified he had never met Jones but Appellant described him and pointed him out, along with the vehicle Jones drove. Appellant testified that Lewis had gone with him to meet Jones on two occasions.

{¶84} And, Jones testified Appellant kept changing the meeting place on the date of the incident. Appellant indicated to Jones he was in a hurry that evening, yet afterwards he asked Jones to get a drink. The jury did not find Appellant to be a credible witness or to have provided credible explanations for conflicts in the evidence.

{¶85} For the foregoing reasons, we find plain error did not occur due to the fact the jury was informed regarding the codefendants' guilty pleas. As such, we overrule the assignment of error and affirm the judgment of the trial court.

> "IV. THE TRIAL COURT ERRED IN FAILING TO PROPERLY ADVISE APPELLANT OF POST-RELEASE CONTROL RENDERING APPELLANT'S CONVICTION PARTIALLY VOID."

> A. Standard of Review

{¶86} We have previously set forth the standard of review for felony sentences above.

B.  Legal Analysis

**{¶87}** When a court determines that a prison term is necessary at sentencing, R.C. 2929.19(B)(3)(c) requires it to notify the offender of a mandatory term of post-release control for certain felony convictions, including felonies of the second degree. *Taylor, supra*, at ¶ 41.  To comply with this requirement, the Supreme Court of Ohio held that trial courts must actually notify offenders of post-release control sanctions both at the sentencing hearing and in the sentencing entry. *Id. See State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, at paragraph one of the syllabus (superseded by statute on separate grounds as stated in *State v. Singleton,* 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958.)  When a court fails to properly impose post-release control for a particular offense, the offending portion of the sentence is void, must be set aside, and is subject to review and correction. *State v. Fischer,* 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, at ¶ 27-29; *State v. Triplett,* 4th Dist. Lawrence No. 10CA35, 2011-Ohio-4628, ¶ 4.  Appellant points out the transcript of the sentencing hearing demonstrates Appellant was not advised of post-release control in any way at his sentencing and only in the final judgment entry, which was insufficient.  Our review of the record confirms this.  The transcript from the sentencing hearing shows that the trial court did not

inform Appellant that he would be subject to post-release control, nor did it inform him of the sanctions for violation of post-release control. As a result, that portion of the sentence is vacated and the matter is remanded for a resentencing hearing in accordance with R.C. 2929.191. We sustain Appellant's fourth assignment of error.

> "V. THE TRIAL COURT ERRED BY NOT GIVING APPELLANT ALL REQUIRED JAIL TIME CREDIT."[5]

> "VI. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL TO A DEGREE THAT APPELLANT DID NOT RECEIVE A FAIR TRIAL."

A. Standard of Review

{¶88} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052; *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, (1970); *State v. Creech,* 188 Ohio App.3d 513, 2010-Ohio-2553, 936 N.E.2d 79, ¶ 39 (4th Dist.); *State v. Pickett, supra,* at ¶ 36.

---

[5] At oral argument, the parties agreed that this assignment of error had been resolved. As such, we do not address the issue of jail time credit in this opinion.

{¶89} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *Pickett, supra,* at ¶ 37; *Strickland,* 466 U.S. at 687; *State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted); *State v. Wesson,* 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 81. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52, (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶90} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." *Pickett, supra,* at ¶ 38, quoting *Strickland,* 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin,* 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶91} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. *Pickett, supra,* ¶ 39; *State v. Short,* 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. White,* 82 Ohio St.3d 16, 23, 693 N.E.2d 772 (1998); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but must require the defendant to affirmatively establish prejudice. *State v. Clark,* 4th Dist. Pike

No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker,* 4th Dist. Ross No.

01CA2592 (Apr. 2, 2002). As we have repeatedly recognized, speculation is

insufficient to demonstrate the prejudice component of an ineffective

assistance of counsel claim. *State v. Jenkins*, 4th Dist. Ross No. 13CA3413,

2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4,

2013-Ohio-2890, ¶ 25; *State v. Halley,* 4th Dist. Gallia No. 10CA13, 2012-

Ohio-1625, ¶ 25; *State v. Leonard,* 4th Dist. Athens No. 08CA24, 2009-

Ohio-6191, ¶ 68; *accord State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-

2577, 971 N.E.2d 865, ¶ 86 (stating that an argument that is purely

speculative cannot serve as the basis for an ineffectiveness claim).

### B.  Legal Analysis

**{¶92}** Appellant argues his counsel was ineffective for failing to

object to the numerous occasions throughout the trial when the jury was

informed of the guilty pleas of both Scott Lewis and Ed Hampton.

Appellant contends that the guilt of Lewis and Hampton was critical in

establishing that Appellant, who maintained he was also a victim of the

robbery, was actually involved in perpetrating the offense. As a result of the

error, Appellant argues he was deeply prejudiced. In response, the State

counters that the decision not to object to the mention of codefendant's

guilty pleas was reasonable trial strategy and cannot be held to fall below an

objective standard of reasonableness.  The State further points out that

Appellant fails to demonstrate prejudice, i.e., that the outcome of the trial

would have been different had his counsel objected.

{¶93} First, we observe that " '[t]he failure to object to error, alone, is

not enough to sustain a claim of ineffective assistance of counsel.' " *Pickett,*

*supra,* at ¶ 41, quoting *State v. Fears,* 86 Ohio St.3d 329, 347, 715 N.E.2d

136 (1999), quoting *State v. Holloway,* 38 Ohio St.3d 239, 244, 527 N.E.2d

831 (1988).  A defendant must also show that he was materially prejudiced

by the failure to object. *State v. Holloway,* 38 Ohio St.3d at 244. *State v.*

*Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 233.

Additionally, tactical decisions, such as whether and when to object,

ordinarily do not give rise to a claim for ineffective assistance. *Pickett,*

*supra,* ¶ 42 at *State v. Johnson,* 112 Ohio St.3d 210, 2006-Ohio-6404, 858

N.E.2d 1144, ¶ 139-140.  As the court explained in *Johnson* at ¶ 139-140:

> "[F]ailure to object to error, alone, is not enough to sustain a
> claim of ineffective assistance of counsel.  To prevail on such a
> claim, a defendant must first show that there was a substantial
> violation of any of defense counsel's essential duties to his
> client and, second, that he was materially prejudiced by
> counsel's ineffectiveness. *State v. Holloway* (1988), 38 Ohio
> St.3d 239, 244, 527 N.E.2d 831.
>
>      * * *
>
>  [E]xperienced trial counsel learn that objections to each
> potentially objectionable event could actually act to their party's

detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice. *Lundgren v. Mitchell* (C.A.6, 2006), 440 F.3d 754, 774. *Accord State v. Campbell,* 69 Ohio St.3d 38, 52-53, 1994-Ohio-492, 630 N.E.2d 339."

**{¶94}** In *Pickett,* the defendant was convicted of aggravated burglary and complicity to felonious assault. On appeal, Pickett argued his trial counsel performed ineffectively by failing to object to inadmissible hearsay. We held that trial counsel's decision not to object fell within the broad realm of trial strategy and did not constitute deficient performance. Moreover, even if trial counsel performed deficiently by failing to object to alleged hearsay testimony, appellant could not demonstrate that the failure to object affected the outcome of the trial. We observed that even if the statements had been excluded, the evidence still amply established that appellant committed aggravated burglary and that he knowingly aided or abetted the commission of the felonious assault. We pointed out Pickett's speculation that some of the hearsay statements bolstered the State's theory of the case was not sufficient to demonstrate ineffective assistance of counsel, and that had trial counsel objected to the statements and had the court excluded them,

we could not find a reasonable probability that the outcome of the proceedings would have been different.

{¶95} Appellant argues trial counsel failed to object "on numerous occasions throughout the trial" when the jury was informed of the guilty pleas of his codefendants Lewis and Hampton. Pursuant to App.R. 16(A) it is Appellant's duty to cite to specific portions of the transcript where alleged error occurred. Since he has not done so, we will assume Appellant is referring to the instances where the codefendants' pleas were mentioned, as pointed out in assignment of three above, which was: (1) twice in opening; (2) in direct; (3) in closing; and (4) in rebuttal.

{¶96} We find no plain error occurred by the admission of the information that Appellant's codefendants had entered guilty pleas in conjunction with the robbery of Sam Jones and no error has occurred by defense counsel's failure to object to the admission of this evidence. Counsel's failure to object fell within the broad realm of reasonable trial strategy. Furthermore, as set forth at length above, overwhelming circumstantial evidence of Appellant's guilt is in the record. We cannot find a reasonable probability that the proceedings would have been different. For the foregoing reasons, we find Appellant's counsel did not render ineffective assistance. As such we overrule the final assignment of error and affirm the

judgment of the trial court.  Accordingly, we affirm the trial court in all

regards except as it pertains to the fourth assignment of error, and remand

for resentencing consistent with this opinion.

**JUDGMENT AFFIRMED IN
PART, REVERSED IN PART,
AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS
OPINION.**

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court,

BY:  _____
Matthew W. McFarland

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**